**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PRIESTS FOR LIFE, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 1:13-cv-1261-EGS |
| U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## <u>DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY</u>

Defendants hereby respond to plaintiffs' notice of supplemental authority, ECF No. 25, addressing the recent decisions in *Zubik v. Sebelius*, No. 2:13-cv-01459, 2013 WL 6118696 (W.D. Pa. Nov. 21, 2013), and *Persico v. Sebelius*, No. 1:13-cv-00303 (W.D. Pa. Nov. 21, 2013), both of which were issued by Judge Arthur J. Schwab in the Western District of Pennsylvania. For the reasons below, the government believes that *Zubik* and *Persico* were wrongly decided.

First, the *Zubik* and *Persico* court erred by relying on, as "instructive," decisions pertaining to secular, for-profit organizations. As defendants have previously explained,[1] because for-profit corporations are not eligible for the accommodation available to the plaintiffs in this case, the challenged regulations require for-profit companies to contract, arrange, and pay for contraceptive coverage for the participants and beneficiaries of their group health plan. The Seventh Circuit, in *Korte v. Sebelius*, __ F.3d __, 2013 WL 5960692 (7th Cir. Nov. 8, 2013), concluded that such an obligation imposes a substantial burden on both the for-profit

---

[1] *See* Defs.' Reply in Supp. of Mot. to Dismiss or, in the Alternative, for Summ. J. ("Defs.' Reply") at 11-12, ECF No. 23 (addressing *Gilardi v. Sebelius*, __ F.3d __, 2013 WL 5854246 (D.C. Cir. Nov. 1, 2013)); Defs.' Resp. to Pls.' Notice of Supp. Auth., ECF No. 26 (addressing *Korte v. Sebelius*, __ F.3d __, 2013 WL 5960692 (7th Cir. Nov. 8, 2013)).

corporations and the owners because the regulations require that they "purchase the required contraception coverage" rather than "refrain from putting this coverage in place," *id.* at *9, and that they "arrange for their companies to provide" such coverage, *id.* at *23. Similarly, in *Gilardi v. Sebelius*, __ F.3d __, 2013 WL 5854246 (D.C. Cir. Nov. 1, 2013), upon which the *Zubik* and *Persico* court also relied, the D.C. Circuit concluded that this obligation imposes a substantial burden on the owners of the for-profit corporate plaintiffs because they are the ones who must "fill the basket of goods and services that constitute a healthcare plan. *Id.* at *7. Thus, according to the D.C. Circuit, the regulations "demand[] that owners like the Gilardis meaningfully approve and endorse the inclusion of contraceptive coverage in their companies' employer-provided plans, over whatever objections they may have." *Id.* at *8.[2]

Plaintiffs here are in a markedly different position than the for-profit plaintiffs in *Korte* and *Gilardi*. As defendants have explained, in order to be relieved of the obligation to contract, arrange, and pay for contraceptive coverage, plaintiffs need only complete the self-certification—which reiterates what they have already stated repeatedly in this case; that they have religious objections to providing contraceptive coverage—and provide a copy of the self-certification to their TPAs. Thus, plaintiffs will do the very opposite of "meaningfully approv[ing] and endors[ing] the inclusion of contraceptive coverage in" their group health plans when they complete the self-certification. *Id.* Instead, by professing their religious objection to contraceptive coverage, plaintiffs will ensure that they—unlike the plaintiffs in *Korte* and *Gilardi*—need not contract, arrange, or pay for contraceptive coverage.

---

[2] Oddly, the *Zubik* and *Persico* court also relied on *Conestoga v. Sebelius*, 724 F.3d 377 (3d Cir. 2013), as instructive, even though, in that case, the Third Circuit concluded that for-profit corporations do not exercise religion under RFRA or the Free Exercise Clause, and that the corporation's individual owners lacked standing to assert a challenge to the preventive services coverage regulations. *Id.* at 382-89. *Conestoga*, obviously, provides no support for the court's conclusion.

The *Zubik* and *Persico* court additionally erred in determining that the accommodation itself imposes a substantial burden on the plaintiffs in those cases. Without citation to any legal authority, the court concluded that—although plaintiffs had previously informed their TPAs of their objection to covering contraceptive services for religious reasons—doing so as part of the accommodation created a substantial burden because, "[n]ow, this type of information previously submitted to an insurer or TPA will be used to facilitate/initiate the provision of contraceptive products, services, or counseling." *Zubik*, 2013 WL 6118696, at *24. This expansive theory of RFRA, however, would mean that an organization could potentially obtain an exemption to any generally applicable law, even though the law does not require it to substantially change its behavior, whenever the organization objects to the changed *consequences* of that behavior. As defendants have explained, this type of reasoning would prevent the government from developing any alternative mechanism to ensure that employees of objecting organizations receive coverage because—no matter what alternative mechanisms the government devised—those alternatives would, in the court's words, "shift the responsibility of purchasing insurance and providing contraceptive products, services, and counseling, onto a secular source." *Zubik*, 2013 WL 2013 WL 6118696, at *25. Indeed, under this theory, plaintiffs' religious exercise would be substantially burdened even if the government itself were to provide coverage for contraceptive services, because doing so for plaintiffs' employees based on plaintiffs' decision not to contract and pay for that coverage due to their religious objections would still "shift the responsibility" of providing coverage away from plaintiffs but onto a third party. RFRA, however, does not give religious objectors both the right to an accommodation and a right to demand that no one else provide the services to which plaintiffs object while still accomplishing the government's health objectives. *Cf. Bowen v. Roy*, 476 U.S. 693, 699 (1986) ("The Free

Exercise Clause simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens.").

The *Zubik* and *Persico* court also erred in concluding that the religious employer exemption—which is intended to accommodate religious exercise—"divides the Catholic Church," and therefore imposes a substantial burden, because it does not extend to all non-profit religious organizations with a religious objection to providing coverage for contraceptive services. Nothing in the law requires that objectively different types of organizations, with different structures and purposes, be treated in precisely the same way. *Cf. Grote Indus., LLC v. Sebelius*, 914 F. Supp. 2d 943, 954 (S.D. Ind. 2012) ("[T]he Establishment Clause does not prohibit the government from [differentiating between organizations based on their structure and purpose] when granting religious accommodations as long as the distinction[s] drawn by the regulations . . . [are] not based on religious affiliation."), *rev'd on other grounds*, *Korte*, 708 F.3d 850; *Droz v. Comm'r of IRS*, 48 F.3d 1120, 1124 (9th Cir. 1995) (concluding that exemption did not violate the Establishment Clause even though "some individuals receive exemptions, and other individuals with identical beliefs do not"). And *any* citation of legal authority for that conclusion is conspicuously absent from the court's analysis. Indeed, the *Zubik* and *Persico* plaintiffs themselves did not argue that the scope of the religious employer exemption imposes a substantial burden under RFRA. *See* Pls.' Mem. in Supp. of Mot. for Prelim. Inj. at 16-24 ("*Zubik* PI Mem."), *Zubik v. Sebelius*, No. 2:13-cv-01459 (W.D. Pa.), ECF No. 6.[3] Nor could they have, because any assertion that the scope of the religious employer exemption is substantially burdensome is entirely derivative of their objections to the accommodation. In other

---

[3] Rather, the *Zubik* and *Persico* plaintiffs claimed that the religious employer exemption runs afoul of the Establishment Clause and interferes with "internal church governance." *See, e.g.*, *Zubik* PI Mem. at 36-42. As defendants have explained, however, every court to consider a similar Establishment Clause claim has rejected it, and plaintiffs' claim that the regulations interfere with church governance is merely a restatement of plaintiffs' substantial burden theory. *See* Defs.' Reply at 20-21.

words, if providing the self-certification to the plaintiffs TPA is not substantially burdensome—which it is not—then it is also not substantially burdensome to fail to qualify for an exemption from that requirement.[4]

Respectfully submitted this 2nd day of December, 2013,

>STUART F. DELERY
>Assistant Attorney General
>
>RONALD C. MACHEN JR.
>United States Attorney
>
>JENNIFER RICKETTS
>Director
>
>SHEILA M. LIEBER
>Deputy Director
>
> /s/ Benjamin L. Berwick
>BENJAMIN L. BERWICK (MA Bar No. 679207)
>Trial Attorney
>United States Department of Justice
>Civil Division, Federal Programs Branch
>20 Massachusetts Avenue N.W.  Room 7306
>Washington, D.C.  20530
>Tel: (202) 305-8573
>Fax: (202) 616-8470
>Email: Benjamin.L.Berwick@usdoj.gov
>
>*Attorneys for Defendants*

---

[4] The government also believes that the *Zubik* and *Persico* court's strict scrutiny analysis was fundamentally flawed. However, as defendants have previously acknowledged, *see* Defs.' Reply at 13, a divided panel of the D.C. Circuit rejected the government's strict scrutiny argument in *Gilardi*, and this Court is bound by that decision. Defendants merely preserve this argument for appeal.

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to all parties.

                                                 */s/ Benjamin L. Berwick*_____
                                                 BENJAMIN L. BERWICK